UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES D.  NEWTON, et al., | ) | CASE NO. 1:13 CV 948 |
| | ) | |
| Plaintiffs, | ) | Judge Dan Aaron Polster |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OF OPINION |
| ANTHONY SOWELL, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

Pro se plaintiff Charles D. Newton filed the above-captioned action individually and on

behalf of plaintiff Vernice L. Crutcher[1]  pursuant to 42 U.S.C. §§ 1981 and 1983 against twenty-

two named defendants, as follows: Anthony Sowell, the City of Cleveland ("City"), the

Cleveland Municipal Court sychiatric Clinic, Cuyahoga County ("County")  Prosecutors

Timothy J. McGinty, Saul Abdullah, Richard Bombik and William Mason, County Sheriff

Gerald T. McFaul, the County Sheriff's Department, the County Board of Commissioners, the

Ohio Department of Rehabilitation, City Safety Director Martin Flask, James Churro of the

Bureau of Special Investigations, County Medical Examiner Dr. Thomas Gilson, Coroner

Administrator Hugh Shannon, Office of Professional Standards ("OPS") Administrator

Cassandra Bledsoe, OPS Investigator Anitra Merritt, Cleveland Police Department ("CPD")

---

[1]     The Complaint indicates that Newton has been appointed as Crutcher's legal guardian by
the Cuyahoga County Probate Court, Case No.  2009GRD151267. Crutcher did not personally sign
the Complaint in this action.

Civilian Review Board Chairman Thomas F. Jones, CPD Chief of Police Michael McGrath, and CPD Detectives Jody Remington and James McPike.  The Complaint alleges violations of Newton's and Crutcher's civil rights, as well as tort claims for defamation, intentional infliction of emotional distress, and negligence, stemming from defendants' purported failure to adequately investigate Crutcher's assertions that defendant Sowell abducted, raped, and assaulted her in 2006.  Plaintiffs seek compensatory and punitive damages, as well as declaratory and injunctive relief.  For the reasons below, this case is hereby dismissed.

## I. Background

The Complaint is rambling and at times incoherent, however, it appears to make the following factual allegations.  On June 18, 2006, Crutcher was abducted, raped, beaten, and "left for dead" in a vacant house on the City's east side.  (Doc. # 1 at 10). Crutcher's assailant also stole several items of jewelry from her person.  Following the attack, Crutcher was taken by ambulance to MetroHealth Medical Center, where she received emergency treatment for her injuries and a rape-kit was secured.  A police report was filed, and Detective McPike was assigned to the case.  On or about June 22, 2006, Crutcher was discharged into the care of Newton, her "former boyfriend."  (*Id*. at 11-12).  No arrest was ever made in connection with the attack on Crutcher, and, according to an October 20, 2006 police report the case was marked as "suspended" and "inactive."  (*Id*. at 13).

Newton and Crutcher believe Crutcher's assailant was Anthony Sowell, who was sentenced to death in connection with the murders of 11 women in August 2011.  *See Ohio v. Sowell*, No.  CR-09-530885 (Cuyahoga Cnty. Ct. C.P.).  The discovery of Sowell's victims in October 2009 was widely publicized in the media.  Plaintiffs assert defendants were aware of

Sowell's propensity for sexual violence and failed to act to prevent his crimes.  Specifically, the Complaint alleges that in June 2005, when Sowell was released from prison after serving a sentence of 5 to 15 years for rape, the Ohio Department of Rehabilitation failed to provide treatment to Sowell and to warn the community of his release.  Further, plaintiffs contend the City municipal court's psychiatric clinic erroneously concluded Sowell was a low risk for sexual recidivism.

In or around March 2010, Newton contacted Detective Remington, notifying her that he believed Sowell was Crutcher's attacker based on his purported physical similarity to Crutcher's attacker and the similarity of Sowell's crimes to that of the attack on Crutcher.  Newton was referred to Assistant County Prosecutor Richard Bombik, who responded by letter dated March 21, 2011, indicating that BCI lab testing had ruled out Sowell as the source of DNA found in Crutcher's rape kit and that the two unknown profiles that were obtained were entered into the CODIS system with no hits.  Plaintiffs allege that the two unknown profiles do not belong to Crutcher's attacker, are unrelated to her assault, and  in fact, Sowell has not been ruled out as the assailant.  The Complaint contends that the police department and prosecutors have manipulated this evidence in an effort to "cover-up" their mishandling of the investigation into the attack on Crutcher.

In July 2011, Newton again contacted Detective Remington after it was announced that several items of women's jewelry had been found in Sowell's home, apparently believing Crutcher's jewelry to be among those items.  Following several conversations, on August 31, 2011, Remington and an unknown officer with the CPD sex crimes unit interviewed Crutcher.  Newton was not permitted to sit in on this interview.  When Newton saw Crutcher exit the

interview room, she was visibly upset and later told him she had been humiliated.  Newton attempted to present further evidence to Remington following the interview, including a "digital line-up" of photos of Sowell, but was rebuffed.  (Doc. # 1 at 22).

In a letter to Newton dated September 9, 2011, County prosecutor Mason issued a "ruling" indicating Crutcher's case was to be held in abeyance pending a match with a DNA profile in the CODIS system.  (Doc. # 1 at 22-23). Police Chief McGrath also wrote to Newton, informing him that Crutcher's case file had been reviewed, no physical evidence linked Sowell to her case, "all divisional procedures were properly followed," and if Newton desired an independent review he could contact the OPS and/or the CPD civilian review board.  (*Id*. at 23).

Newton contends he filed a complaint with OPS on September 18, 2011, alleging the sex crimes unit had mishandled the investigation of Crutcher's attack by failing to review all of the evidence and not taking her seriously.  On January 30, 2012, OPS notified plaintiffs it had completed its preliminary investigation and had discovered that Crutcher's case was still an "open" investigation assigned to the sex crimes unit.  In light of this status, OPS informed plaintiffs their case would be held indefinitely pending resolution of the sex crimes unit's investigation.  On February 2, 2012, Newton sent a letter to OPS Administrator Bledsoe and Chairman Jones of the civilian police review board, accusing the police department of fraudulently classifying Crutcher's case as "open" to exempt it from independent review when the case had been previously marked suspended and/or inactive in October 2006.

Subsequently, in December 2012, plaintiffs "discovered" coroner photos dated November 5, 2009, which appeared in a true crime book about Sowell's crimes.  (Doc. # 1 at 28).  Those photos purportedly depict a watch resembling one that was stolen from Crutcher

when she was attacked in 2006.  In January 2013, Newton contacted the County coroner's office and Detectives Remington and Pike about this new evidence, but he did not receive any response.

Based on the foregoing factual allegations, the Complaint outlines eighteen claims for relief.  In counts one and two, plaintiff seeks compensatory and punitive damages for "malicious mental anguish" perpetrated by the City and County defendants pursuant to Ohio Rev. Code §§ 2315.18 and 2315.21.  In counts three and four, plaintiffs claim racial discrimination in violation of 42 U.S.C. §§ 1981 and 1983 respectively.  Next, plaintiffs allege the City defendants were negligent in their failure to prevent Sowell's crimes in that Sowell "was released from imprisonment without rehabilitative treatment."  (Doc. # 1 at 32-33).  In count six, the complaint alleges the Court Psychiatric Clinic was negligent in its sexual predator evaluation of Sowell and the County Sheriff was negligent in failing provide the community notice regarding a Tier III sexual offender's residence in the community.  In count seven, the complaint alleges fraud, obstruction of justice, and dereliction of duty in violation of Ohio Rev. Code §§ 2315.21 and 2921.32 and 18 U.S.C. § 1512 against the City, Detectives Remington and McPike, prosecutor Mason, and Chief McGrath.  Count eight alleges OPS, the civilian review board and the Medical Examiner's officer deprived plaintiffs of due process and participated in the City defendants' obstruction of the investigation into Crutcher's attack.  The ninth claim alleges slander, libel and defamation against Mason, McGrath, Remington, McPike, and the City, and contends these defendants told the media Sowell had been cleared of Crutcher's attack, which Newton claims adversely impacted the sales of his self-published book about the incident and its purported link to Sowell.  Count ten claims intentional infliction of emotional distress.  Finally, counts eleven

through eighteen, seek injunctive relief, including compelling defendants to complete a full investigation into Crutcher's assault, access to interview videos, case files and evidence, public apologies, and amendment of the City's charter to allow OPS to independently review open cases.

## II.  Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a "district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that patently frivolous claims divest the district court of jurisdiction); *In re Bendectin Litig.*, 857 F.2d 290, 300 (6th Cir. 1988) (recognizing that federal question jurisdiction is divested by obviously frivolous and unsubstantial claims).

## III.  Analysis

### A. Parties

As an initial matter, plaintiff Charles D. Newton purports to file this action on behalf of himself and his ward, Vernice L. Crutcher.  In general, a party may plead and conduct his or her own case in person or through a licensed attorney.  *See* 28 U.S.C. § 1654.  A *pro se* litigant, however, may not represent anyone other than him or herself.  *See e.g. Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) ("[I]n federal court a party can represent himself or be

represented by an attorney, but cannot be represented by a nonlawyer"); *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, he has no authority to appear as an attorney for others than himself"); *Eagle Assoc. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (stating that § 1654 "does not allow for unlicensed laymen to represent anyone else other than themselves"); *Cochran v. Nelson*, No. 93–3521, 1994 W L 28648, at *3 (6th Cir. Feb. 1, 1994) ("Because [plaintiff] is not an attorney, he may not represent his son in federal court").  Moreover, an adult litigant who wishes to proceed *pro se* must personally sign the complaint to invoke this court's jurisdiction.  *See Steelman v. Thomas*, No. 87–6260, 1988 WL 54071 (6th Cir. May 26, 1988).

The Court notes that Newton, a non-attorney, is claiming authority to represent Crutcher in this action by virtue of his appointment as her adult legal guardian by the Cuyahoga County Probate Court.  (Doc. # 1 at 6).  Although a guardian may sue on behalf of an incompetent person, Fed. R. Civ. P. 17, a guardian is not permitted to serve as legal counsel to an incompetent person.  Section 1654 clearly makes no provision for a non-attorney's representation of another in federal court.  *See e.g., Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147 (7th Cir. 2001); *Johns v. Cnty. Of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) ("guardian *ad litem* . . . may not represent a minor without retaining a lawyer."); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self a person may not appear on another person's behalf in the other's cause.")  Legal guardianship simply is ineffective to permit Netwon to file a *pro se* action on behalf of Crutcher.  *See e.g. Cheung v. Youth Orchestra Found., Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) (lay parent or guardian cannot file *pro se* complaint on behalf of minor or ward, who must be represented by attorney); *L.A. ex rel.*

*Arnold v. Mitchell*, No. 3:11-1088, 2012 WL 1831246, at *2 (M.D. Tenn. May 18, 2012) (mother of legal incompetent could not prosecute daughter's claims without representation by a licensed attorney).

Because Crutcher has not signed the complaint, this Court will consider Newton to be the sole plaintiff in this action.

### B. Federal Claims

As a preliminary matter, to the extent Newton seeks to assert claims which are based on a violation of Crutcher's constitutional rights, he lacks standing.  To establish a prima facie case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  Claims asserted in a § 1983 action are personal to the injured party and, therefore, can only be brought by the person whose rights were violated. *Shepard v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003).  Thus, Newton lacks standing to assert claims for racial discrimination against Crutcher or for violations of Crutcher's due process rights.

The complaint alleges that defendants' conduct and inaction violated Newton's due process rights under the Fifth and Fourteenth Amendment of the United States Constitution and that defendants were clearly motivated by racial animus against African Americans.

Section 1981 provides a remedy for intentional racial discrimination in the making and enforcing of contracts regarding public and private actors.  *Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001).  In order to establish a claim for racial discrimination under § 1981, a plaintiff must show that (1) he belongs to an identifiable class of persons who

-8-

are subject to discrimination based on their race; (2) defendants intended to discriminate against him on the basis of race; and (3) defendant's discriminatory conduct abridged a right enumerated in § 1981(a).  *Id.* at 871–72; *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006).  A claim that a public official, acting under color of law, "intentionally refused to perform an act, even a discretionary one, solely on the basis of a complainant's race states a cause of action under 42 U.S.C. § 1981."  *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982).

Newton's claims of racial discrimination are wholly conclusory.  To sufficiently state a cause of action, plaintiff must allege some facts that demonstrate that defendants' abridged *his* rights under § 1981 on the basis of his race.  Newton has no cognizable interest or right to an investigation into a criminal act committed against Crutcher, no matter how passionately he believes in her plight.  Moreover, even if Newton had such a right, the Complaint does not plead facts that demonstrate the reason for defendants' actions or inactions was Newton's race.

For similar reasons, Newton has not alleged facts to support a cause of action under 42 U.S.C. § 1983.  Again, to establish a prima facie case under § 1983, plaintiff must assert that a person acting under color of state law deprived *him* of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt*, 451 U.S. at 535.  To assert a claim for denial of procedural due process, Newton must plead and prove either that he was deprived of liberty or property as a result of an established state procedure that itself violates due process rights; or that the defendants deprived him of liberty or property pursuant to a random and unauthorized act and available state remedies would not be adequate to redress the deprivation.  *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983).  Newton is not challenging an established state procedure.  Instead, he

developed his own procedure and demands compliance with it.  Defendants' refusal to

acknowledge or respond to Newton's demands is not a denial of due process.  Moreover,

Newton has failed to identify any deprivation of a liberty or property interest of his own.

Finally, Newton's claims under the United States Criminal Code also must fail.  A

criminal statute does not provide a private cause of action.  *Banks–Bey v. Acxiom*, No. 1:09 CV

1249, 2010 WL 395221, at *3 (N.D. Ohio Jan. 27, 2010).  His claims for obstruction under 18

U.S.C. §§ 1505 and 1510 and for tampering under 18 U.S.C. § 1512 are frivolous.

### C.  State Law Claims

Newton's remaining claims all arise, if at all, under state law.  Subject matter jurisdiction

for these state law claims cannot be based on diversity of citizenship under 28 U.S.C. §

1332(a)(1), which vests the federal district courts with jurisdiction in cases of sufficient value

between citizens of different states.  Plaintiffs and all of the defendants are citizens of the state

of Ohio.  The Court can exercise supplemental jurisdiction over the state law claims if the Court

is also entertaining federal law claims that derive from the same nucleus of operative facts and

when considerations of judicial economy dictate having a single trial.  *United Mine Workers of*

*America v. Gibbs*, 383 U.S. 715, 724 (1966).  The Court, however, has discretion in hearing

state law matters and, in cases where the federal law claims are dismissed before trial, the state

law claims should also be dismissed.  *Id.* at 726.  Having dismissed Newton's federal law

claims, this court declines jurisdiction to hear his state law claims.

### IV.  Conclusion

Accordingly, for the foregoing reasons, the Court finds as follows: plaintiff Vernice L.

Crutcher is not a proper party to this action; and the Complaint is dismissed for lack of subject

matter jurisdiction.  Further, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an

appeal from this decision could not be taken in good faith.[2]

**IT IS SO ORDERED**.

      */s/Dan Aaron Polster 5/2/13*

**Dan Aaron Polster**
**United States District Judge**

---

[2] 28 U.S.C. § 1915(a)(3) provides, "An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."